FARISH CARTER, PLAINTIFF IN ERROR, VS. ARCHIBALD T. BENNETT, DEFENDANT IN ERROR.

1. The Supreme Court of the United States has, under the laws of Congress, appellate jurisdiction over certain decisions of the State Courts.

2. A writ of error to the Supreme Court of a State, has the same effect as if the judgment or decree complained of had been rendered or passed in a Circuit Court of the United States.

3. A writ of error to a State Court, if sued out within the time and with the formalities required in cases of writs of error to the Circuit Courts of the United States, operates in like manner as a supersedeas, and stay of execution·

This was a rule *nisi* on the Clerk, to shew cause why he should not be required to issue execution on the judgment rendered in this cause. The answer of the Clerk is embraced in the opinion of the Court.

*W. G. M. Davis*, for the motion.

*J. T. Archer*, contra.

ANDERSON, Chief Justice, delivered the opinion of the Court.

To a rule to *nisi* shew cause why said rule should not be made absolute, requiring the clerk to issue execution on the judgment heretofore rendered in this case, the clerk has responded as follows :

In answer to the rule nisi granted in this cause on the 5th day of January, A. D. 1853, requiring the clerk of this Court to shew cause why a rule absolute should not be granted commanding him to issue execution in this cause, I, John P. K. Savage, shew as follows :

Carter vs. Bennett.—Opinion of Court.

That on the 29th day of January, 1852, and within two days (Sunday exclusive) after the pronouncing of the said judgment in the above entitled case, the said Farish Carter sued out a writ of error to the Supreme Court of the United States, under the 25th section of the Judiciary act of Congress of 1789, for the purpose of removing said cause to said Supreme Court, on the allegation of certain errors in the judgment and proceedings of this Court, and that on the 30th day of the same month of January, and within ten days (Sunday exclusive) after pronouncing said judgment in this Court, filed a copy of the said writ of error in my office.

And on the 3d day of February, A. D. 1852, the said Farish Carter tendered to the Hon. Walker Anderson, Chief Justice of this Court, his bond, with sureties, in the penalty of fifty thousand dollars, conditioned to prosecute said writ of error to effect, and to answer all damages and costs in case he should fail to make good his plea. Which said bond was on the 5th day of the last mentioned month of February, approved by the Honorable Walker Anderson, Chief Justice, as good and sufficient; who thereupon directed said bond to be filed in this office, and allowed and signed a citation, as provided by law. And this respondent, deeming said proceedings in error to operate as a supersedeas upon the further execution of the judgment of this Court, did not issue execution thereon.

JOHN P. K. SAVAGE,<br>Clerk of the Supreme Court.

Upon this state of facts, the Court is required to decide whether the writ of error sued out by the defendant in execution, in the manner stated by the clerk, shall operate as a supersedeas. We do not understand that any doubt is expressed as to the right of the plaintiff in error to have his writ, or that the appellate jurisdiction of the Supreme

Court of the United States over the decisions of the State Court, (restricted as it is to the examination of a few specified questions) extends to the case before us.

It seems to be conceded, that this case involves one of the questions reserved by the Constitution and laws of the United States, for the revisory jurisdiction of its own Supreme Court. But it is contended that the writ of error, though sued out in conformity to the acts of Congress, and accompanied by the circumstances set forth in the answer of the clerk, cannot have the effect of arresting the final process of this Court upon its own judgment.

The constitutionality of the 25th section of the Judiciary Act of 1789, which gives to the Supreme Court of the United States, the right to re-examine the judgments and decrees of the State Courts, in certain specified cases, was at an early day strenuously contested. In Martin vs. Hunter, 1 Wheaton, 304, the counsel for defendant in error, contended that the appellate jurisdiction of the Supreme Court was limited by a true construction of the Constitution to proceedings in the inferior *national* judicatories. But the validity of the law was ably vindicated and fully maintained by the Supreme Court. In a subsequent case —that of Cohens vs. the State of Virginia, 6 Wheaton, 264— this decision was amply and explicitly confirmed, and the appellate jurisdiction of the Court in this form, has been repeatedly exercised and is now regarded as definitely settled.

The appellate jurisdiction of the Supreme Court over certain decisions of the State Courts, being thus rightfully derived from the laws of the United States, we must necessarily look exclusively to those laws for the *mode* of its *exercise*, as well as its extent. The right to re-examine, necessarily implies authority to regulate the mode in which the right shall be exercised. And to solve the question

presented to us, we have, therefore, but to look to the laws of the United States, which regulate the mode in which writs of error shall be sued out, and which define their operation and effect.

The 25th section of the Judiciary Act of 1789, which gives the writ of error from the State Courts, provided that a final judgment or decree in such Courts in certain specified cases, " may be re-examined and reversed or affir-"med in the Supreme Court of the United States, upon a " writ of error, the citation being signed by the Chief Jus-" tice, or Judge, or Chancellor of the Court, rendering or " passing the decree or judgment complained of, or by a " Justice of the Supreme Court of the United States, in " the same manner and under the same regulations, and " *the writ of error shall have the same effect*, as if the " judgment or decree complained of had been rendered or " passed in a Circuit Court."

If this law is in consistency with the Constitution, as has been repeatedly decided by the Supreme Court, and as is acknowledged by the universal acquiescence of the State Courts, it only remains for us to inquire, what effect a writ of error sued out of a Circuit Court, in the mode, and with the circumstances set forth in the clerk's answer, would have upon the judgment or decree complained of?

The 22d section of the Judiciary Act prescribes the *mode* in which a writ of error shall be sued out of a Circuit Court, and the 23d section defines its *effect*. The 22d section requires that there shall be annexed to, and returned with the writ of error, " an authenticated transcript of the record, and assignment of errors, and prayer for reversal, with a citation to the adverse party." The citation which is thus made a necessary part of the writ, shall not be signed by the Judge or Justice until he has taken good and suffi-

cient security that the plaintiff in error shall prosecute his writ.

The 23d section, which defines the effect of a writ of error, enacts " that a writ of error as .aforesaid, shall be a " supersedeas and stay of execution, in cases only where " the writ of error is served by a copy thereof being lodged " for the adverse party in the clerk's office where the rec- " ord remains, within ten days (Sundays exclusive) after " rendering the judgment or passing the decree com- " plained of."

The 25th section declares, that a writ of error from the State Courts, shall have the same effect upon the judgments and decrees of those Courts, as it would ·have upon the judgments and decrees of the Circuit Court, if sued out from that Court, and the 23d section declares, that in this latter Court, it shall be a supersedeas and stay of execution, if sued out within a certain time and with certain formalities, and therefore, by virtue of the 25th section, the writ, if sued out in like manner from the State Courts, shall be in like manner a supersedeas and stay of execution there. This conclusion is inevitable from the language used in the respective sections of this act. That we have not been led aside from the true intent and purpose of these provisions by an adherence to the literal terms of the act, is apparent from a consideration of the duty imposed upon the Chief Justice of a State Court when he is called upon to sign the citation. As " the *same regulations*" are prescribed by the act for writs of error from the State Courts, as for those from the Circuit Courts, it follows, that the Chief Justice of the State Court, in signing the citation, must abide by the regulations or rules laid down for the Judges of the national Courts. Now, these latter are required in terms by the act of 1789, upon signing a citation, " to take good and sufficient security, that the plaintiff in

" error shall prosecute his writ," &c.   A subsequent act, approved December, 1794, enacts, " that the security to be " required and taken, on the signing of a citation on any " writ of error, which shall not be a supersedeas and stay " of execution, shall be only to such an amount, as in the " opinion of the Justice or Judge taking the same, shall be " sufficient to answer all such costs as upon an affirmance " of their judgment or decree, may be judged or decreed " to the respondent in error."

We might justly infer from this provision, that in other cases, the security to be required and taken should be of a larger amount, but we are not left to uncertain conjecture upon this point.   The Supreme Court, in adjusting the duty of Judges in this particular, said in an early case, (9 Wheat., 553,) " when the writ of error is sued out and served within ten days (Sundays exclusive) after judgment, so as to make it a supersedeas, the penalty of the bond must be in a sufficient sum to secure the amount depending upon the decision of the appellate Court."

We learn in this case from the return of the clerk, that the Chief Justice of this Court, adopting, as we have no doubt it was his duty to do under the provisions of the 25th section of the Judiciary Act, the rules and regulations prescribed for the Judges of the national Courts, did require and take from the plaintiff in error, a bond for more than double the amount of the sum for which judgment had been rendered.   Why was this required of him, if the writ of error was not to operate as a supersedeas ?   There can be but one reply to this inquiry, and that is, that as the writ was to be sued out in the two judicatories, *in the same manner and under the same regulations*, so it was to have the same effect in both.

The conclusions at which we have arrived are so obviously deducible from the terms of the Judiciary Act, and
13

are so well fortified by the reason and purposes for which writs of error are given in all Courts, and are so strongly sanctioned by analogies found in the practice of our Courts, that we would not have argued them at length, had not this motion been pressed with great zeal by the counsel for the respondent in error, and had not the views which he endeavored to impress upon the Court been to some extent sustained by the opinion of an eminent lawyer lately deceased, as expressed in a manuscript letter read to the Court.

It was evident, we think, that the opinion thus expressed, was given upon first impressions, without an examination of the question, and at all events our minds have been led irresistibly to an opposite conclusion, in spite of the authority of his great name.

It appearing to the Court, from the answer of the clerk, that the plaintiff in error has fully complied with the requirement of the 23d section of the Judiciary Act, to make his writ a supersedeas and stay of execution, it is the judgment of this Court, that the motion to make the rule upon the clerk absolute, be denied.